ERNEST M. PEASE vs. CHARLES H. COLE AND ANOTHER.

In the case of non-trading partnerships the individual partners have not the same implied authority as in commercial partnerships to bind the firm by notes executed in the name of the firm.

In such a case the presumption of want of authority may be overcome by proof of express authority or of such a state of facts as justly implies authority.

These facts may be a course of conduct on the part of the firm, the usage of similar partnerships, the necessities of the business, or a ratification of the act by receiving the benefit of it.

A partnership formed for conducting a theater is one of the non-trading class.

How far a bonâ fide holder of a promissory note thus executed is affected by the character of the partnership where he had no knowledge on the subject: Quære.

Whether the note of a non-trading partnership, made by one of the partners, for a debt of the firm, would not be binding on the firm: Quære.

The term "burden of proof" is properly used only with reference to a party who is burdened with the necessity of proving some affirmative fact essential to the support of his case. The burden of proof, in this sense, never shifts from side to side during the trial. The necessity of supplying prevailing evidence shifts from one side to the other as the evidence on one side or the other predominates; but this is a matter of sufficiency of proof, not of the burden of proof.

[Argued May 19th—decided August 28th, 1885.]

ACTION by an indorsee on a promissory note of the defendants; brought to the Court of Common Pleas of Hartford county and tried to the court before Calhoun, J. The following facts were found by the court:

In July, 1883, the defendants, Charles H. Cole and Daniel

McCarthy, formed a copartnership for the purpose of conducting the Capital Theater in the city of Hartford. The copartnership was to continue four years. · The partnership agreement was by parol. The defendants were equal partners. The defendants commenced business early in August, 1883, and afterwards, on the 24th day of August, 1883, the defendant McCarthy borrowed of his father, J. B. McCarthy, $750, for which he gave the note in suit.

The weekly expenses of the theater were about $350. For a time each partner paid bills as they were presented, but no amount of capital stock was agreed on, nor was any sum paid in as such by either of the partners. McCarthy advanced about $666 in the payment of bills, and Cole about $3,200.

McCarthy was an actor, and performed on the stage, and was worth in cash, when the copartnership was formed, about $700 or $800, and this was known to Cole. Cole had been a theatrical manager, and was a man of some means. He resided in Bridgeport, Connecticut.

Neither partner had any express authority to execute notes in the firm name, and the note in suit was the only one given in the firm name. Cole did not know that this note had been given until the plaintiff had purchased it, nor did he know that his partner had borrowed money of J. B. McCarthy. When this note was given the firm owed about $900 for chairs. There was no evidence to show that the money borrowed by McCarthy was applied for copartnership purposes, nor in what way it was used by him.

The plaintiff bought this note of J. B. McCarthy, the father, for $700, November 20th, 1883, and it was indorsed by said McCarthy to the plaintiff. About ten days before November 20th, 1883, J. B. McCarthy applied to the plaintiff for a loan on the note. This the plaintiff refused. Afterwards on the same day the plaintiff inquired of the defendant McCarthy if the note was good, telling him that his father wished to borrow money on it. McCarthy told the plaintiff that the note was all right and was a firm note.

Trusting to this statement the plaintiff bought the note of the payee as before stated.

After J. B. McCarthy applied for a loan on the note, and before November 20th, 1883, the plaintiff saw Cole, but made no inquiry of him respecting the note. This failure to inquire of Cole did not arise from a belief that such an inquiry would result in finding the note invalid, and the plaintiff had no express notice of any defect in the note. The plaintiff purchased the note in good faith, without notice of any defect therein.

The plaintiff knew that the note was in the handwriting of Daniel McCarthy, and of the relation between him and J. B. McCarthy, and the nature of the business carried on by Cole & McCarthy, and that Cole was the only one of the partners of any pecuniary responsibility. The plaintiff had occasionally loaned money to the firm to pay bills before November 20th, 1883, at the request of the defendants' manager. The largest sum so loaned was $70. . Except in one instance these loans were made by cashing Cole's checks.

Upon these facts the defendant Cole claimed as matter of law—(1) that the defendant McCarthy had no authority to execute the note in suit; (2) that the plaintiff was not a bonâ fide holder of the same, and that he had both express and implied notice that the note was a fraud on the defendant Cole.

The court overruled these claims and rendered judgment for the plaintiff against both of the defendants for the amount of the note. The defendant Cole appealed to this court.

*G. G. Sill* and *H. S. Sanford*, for the appellant, contended that the partnership in the present case belonged to the class known to the law as "non-trading partnerships," as distinguished from trading or commercial partnerships; that while in the latter class there is an implied authority in each partner to bind the firm by executing notes in the name of the firm, no such implied authority exists in the

case of the former class; that therefore McCarthy here had no such implied authority and could bind the firm by executing a note in its name only upon authority actually given or to be inferred from the practice of the firm, or upon the act being ratified by the firm by an acceptance of the benefit of it; that no such authority or ratification was proved here, it being expressly found that this note was the only one ever given in the firm name and that there was no evidence to show that the money was applied for partnership purposes; that it made no difference that the note had gone into the hands of a bonâ fide purchaser, as it had no validity at the outset; but that the plaintiff was not a bonâ fide purchaser since he knew the character of the partnership and had an opportunity to inquire of Cole with regard to the matter, and having the opportunity was in duty bound so to inquire, but wilfully neglected to make the inquiry.

*L. E. Stanton* and *S. F. Jones*, for the appellee.

1. The partner Cole alone makes defense against the note in suit. The substance of his defense is that it was executed for the private use of the partner McCarthy and that the note is a fraud upon Cole. In this defense he has totally failed. He did not show that the note was given for capital to be furnished by McCarthy, or for any private uses, nor that the proceeds were not for partnership uses, or that he (Cole) was in any manner defrauded thereby. He also had set up that the plaintiff is not a *bonâ fide* holder, but the court found the fact directly against him. Of course the burden of proving these averments was upon him. The plaintiff offered his note, proved the purchase of it for $700 and the facts relating to the purchase, and rested his case. In this state of the proof the defendant offered no evidence as to the inception of the note, or for what purpose the money was borrowed, or to what uses the same was applied. The finding is that " there was no evidence to show that the money borrowed by McCarthy was applied for copartnership purposes, nor in what way it was used by him." But a partnership note is conclusively

presumed to be for partnership purposes until the contrary is shown. "If a purchase is made in the name of a firm or money borrowed and a note given or indorsed in that name, this is *primâ facie* evidence of a debt from that firm, and it can only be rebutted by proof in the defense that this was fraudulently done by the individual partner for his own private use and that it was known to the creditor. Now the making and offering such a note is nothing more than a representation that the money is wanted for the use of the company, and as they confide in the individual they will be bound by his acts." *Etheridge* v. *Binney*, 9 Pick., 274. The same doctrine is laid down in numerous other cases. *Littell* v. *Fitch*, 11 Mich., 525; *Carrier* v. *Cameron*, 31 id., 373; *Barrett* v. *Swan*, 17 Maine, 180; *Le Roy* v. *Johnson*, 2 Peters, 197. This is true although the partnership be limited to a particular business, such as contracts to build sections of a particular railroad. *Holmes.* v. *Porter*, 39 Maine, 157. The partnership being admitted, the presumption of law is that a note made by one partner in the name of the firm was given in the regular course of partnership dealing until the contrary is shown on the part of the defendants. *Doty* v. *Bates*, 11 Johns., 546. As the present case stands the sum of $750 was loaned on this note to Cole & McCarthy for the purposes of their business, and was applied to such purposes by them.

2. The defendant Cole claims that this was a *non-trading* partnership, and therefore neither partner could bind it by a note. But the rule is not so broad as to exclude every partnership which does not buy or sell goods from binding itself by notes. "Limitations upon the authority of one partner to represent his co-partners may also be imposed by the nature and usages of particular trades. The fact that a partnership is engaged in a particular trade being known, is sufficient notice to third persons of the limitations which the nature and customs of that trade place upon the power of each partner." Parsons on Partnership, 99, note *y*. And it has been held that lawyers, physicians, farmers, taverners and the like have not, when partners, the general power to

bind the firm by note. Yet planters may, when it is their custom to borrow money, be bound by a firm note. *Lea* v. *Guice*, 13 Sm. & Marsh., 656. So of partners in the business of farming and coopering. *McGregor* v. *Cleveland*, 5 Wend., 475. So also of partners for the mere purpose of selling territory for the enjoyment of a particular patent right. *Barrett* v. *Flint*, 45 Verm., 44. Even in a nontrading partnership the power does exist if there be either necessity or usage for it as shown by the practice of the firm. *Davis* v. *Richardson*, 45 Miss., 508; *Gray* v. *Ward*, 18 Ill., 32. It is binding if it is according to the usual course of their business. *Livingston* v. *Roosevelt*, 4 Johns., 279, note. In this case the necessity and usage were both abundantly shown. The firm owed $900 for chairs. It was doing business at an expense of $350 per week, and McCarthy was the active manager residing in Hartford, but had little or no means. Cole was in Bridgeport sending checks from time to time. McCarthy was obliged to apply to the plaintiff to loan money on the checks, and once borrowed money from him without any voucher. A partnership the object of which was to get out lumber and bring it to market, had an agent who gave several notes to workmen for labor and services. Held that the notes were binding. *Tappan* v. *Bailey*, 4 Met., 529. This firm of theatrical managers were incurring debts of $350 per week, mostly for labor and services, and the same necessity existed as in the case just cited.

3. Even if one partner has no right as against his copartner to make or issue a firm note, or if he misapplies the proceeds, yet the note is binding in the hands of a third person who is ignorant of the defect or fraud. "And it is equally true there are instances in which one partner may bind the firm by a contract in which the firm has no interest; as when one partner gives out a negotiable note made in the name of the firm to a party who indorses it to another party for value, and the last party receives it without any knowledge that it was not made for a partnership transaction." Per WALDO, J., in *Mix* v. *Muzzy*, 28 Conn., 190.

See also *N. York Firemen's Ins. Co.* v. *Bennett*, 5 id., 579; *Moriarty* v. *Bailey*, 46 id., 592; *Blodgett* v. *Weed*, 119 Mass., 215, 220; *Hayward* v. *French*, 12 Gray, 456; *Onondaga County Bank* v. *DePuy*, 17 Wend., 47. When the partner offers the note in the usual course of the business there is the requisite authority, and his misapplication of the funds or fraud constitutes no defense. *Winship* v. *Bank of United States*, 5 Peters, 529, 563; *Onondaga County Bank* v. *DePuy*, *supra*.

LOOMIS, J.—The question involved in this case is, whether one member of a copartnership formed for the purpose of conducting a theater in Hartford, could, under the circumstances mentioned in the finding, bind the other member by executing a negotiable promissory note in the name of the firm for money borrowed.

The finding in terms excludes all express authority of the other partner, and even all knowledge of the matter on his part. So that any conclusion that the note is the note of the firm rather than of the member executing it, must necessarily rest on an authority to be implied. But here again the facts found so circumscribe the range of inquiry as to exclude all the ordinary sources of such authority.

The circumstances from which an authority may be implied are identical with those involved in a question of ordinary agency, for each partner is regarded as the accredited agent of the rest.

In many cases the decisive fact is found in the customary course of dealing, but not so here, for it is found that the note in question was the only note ever given in the name of the firm. The copartnership first commenced business in August, 1883, and on the 24th of the same month the note in suit was given. There was therefore very little time for a course of conduct or usage of any sort to grow up, giving any apparent authority.

The finding traces the money borrowed only into the hands of McCarthy, the partner who signed the firm name, and no fact appears showing directly or presumptively that

the act was necessary for any of the purposes of the partnership.

The only remaining source from which an authority may be derived by implication must be sought in the nature and scope of the partnership and in the nature of the act. And here, if we examine the legal principles that are applicable, it will be found not only that all such implication is wanting, but that the presumption is directly against the authority assumed. The weight of authority in the United States and the uniform tenor of the authorities in England will be found to establish a controlling distinction in respect to implied authority between commercial or trading and non-trading partnerships. Story on Partnership. 6th ed., § 102, *a*; 1 Lindley on Partnership, 4th ed. (by Ewell), top, page 266 and note 1 and cases there cited; 1 Collyer on Partnership, 648, 658; Metcalf on Contracts, 121, and cases cited in the notes.

In a commercial partnership each acting partner is its general agent, with implied authority to act for the firm in all matters within the scope of its business, and the presumption of law is that all commercial paper which bears the signature of the firm, executed by one of the partners, is the paper of the partnership, for the reason that the giving of such notes would be within the usual course of mercantile transactions.

But when we pass to non-trading partnerships the doctrine of general agency does not apply, and there is no presumption of authority to support the act of one partner. Hence, in order to subject the firm upon a bill or note executed by one partner in its name, a course of conduct, or usage, or other facts sufficient to warrant the conclusion that the acting partner had been invested by his co-partners with the requisite authority, must appear, or that the firm has ratified the act by receiving the benefit of it.

That the partnership in question belongs to the non-trading class seems so obvious as to need no discussion. The brief in behalf of the defendant Cole cites many cases, and gives a long list of pursuits and professions

which those cases establish as of the non-trading class, and although the conduct of a theater is not there mentioned yet the analogies manifestly include it.

To show the existence of the distinction contended for and its application, we select from a multitude of authorities the following in addition to those previously referred to.

In *Judge* v. *Brasswell*, 13 Bush, (Ky.,) 67, the defendants were partners under an agreement to engage in mining business upon lands then leased or which might be thereafter acquired. One of the members of the firm purchased, without the others' consent, and took conveyances of mining land in the name of the firm, and gave the bills of the firm therefor. In an action by the payee of the bills against the firm, a defense was made by the other partners that the purchase was without their consent or ratification, and in the plea they renounced all claim to the lands purchased. The court held that the firm was not liable on the bills, saying that the power of one partner to bind his co-partners rests alone on the usage of merchants, and does not amount to a rule of law in any other than commercial partnerships. In non-commercial partnerships one who seeks to hold the firm bound upon a contract made by a single member, must be able to show either express authority or that such is the customary usage of the particular branch of business in which the firm is engaged, or such facts as will warrant the conclusion that the partner had been invested by his co-partners with the requisite authority.

In *Hedley* v. *Bainbridge*, 3 Queen's Bench, 316, the defendants were attorneys in partnership, and one of the partners gave a note in the name of the firm to the plaintiffs for the balance of advancements made to one partner who was acting in behalf of the firm ; the advances were to be laid out on mortgage by the firm. Lord DENMAN, C. J., in giving the opinion said :—" No doubt a debt was due from the firm ; but it does not follow that one partner had authority to give a promissory note for that debt. Partners in trade have authority, as regards third persons, to bind the firm by bills of exchange, for it is the usual course of

mercantile transactions so to do; and this authority is by the custom and law of merchants, which is part of the general law of the land. But the same reason does not apply to other partnerships. There is no custom or usage that attorneys should be parties to negotiable instruments; nor is it necessary for the purposes of their business. * * * Upon the whole we think that the implied authority is confined to partners in trade."

In *Dickinson* v. *Valpy*, 10 Barn. & Cress., 128, the plaintiff was an indorsee for value of a bill of exchange drawn and accepted in the name of a mining partnership by order of its regular directors. It was held incumbent on the plaintiff to prove that the directors had authority to bind the company, and that it was necessary for the purpose of carrying on the business of the company or usual for other similar mining companies to draw or accept bills of exchange. Opinions were given by Lord TENTERDEN, C. J., and Judges BAILEY, LITTLEDALE and PARKE, and the same distinction was made as in other cases between trading and non-trading partnerships. See also *Greenslade* v. *Dower & Coleman*, 7 Barn. & Cress., 635.

In *Levy* v. *Pyne & Richards*, tried before Baron ALDERSON, 1 Car. & Marsh., 453, it was held, that "if a bill of exchange or promissory note be drawn, accepted or indorsed, by one of two persons who are partners in a business which is not a trade (*e. g.* as attorneys), in the name of the firm, * * * the plaintiff must give evidence of the authority of the other partner to draw, accept or indorse in the name of the firm; but in the case of a commercial firm this is not necessary, as there is a general authority.". See also *Richards* v. *Bennett*, 1 Barn. & Cress., 223 ; *Garland* v. *Jacomb*, Law Reps., 8 Exch., 218.

In *Smith* v. *Sloan*, 37 Wis., 285, the court by LYON, J., after an able and exhaustive review of the authorities, adopted the following proposition as fully sustained :—"We gather from all the authorities that the distinction between a trading and non-trading partnership, in respect to the power of a partner to bind his co-partner by negotiable

instruments, is not limited to a mere presumption of such authority in one case and the absence of such presumption in the other, as the learned counsel for the plaintiff argued; but we think, and must so hold, that one partner in a non-trading partnership cannot bind his co-partner by bill or note, drawn, accepted or indorsed by him in the name of the firm, not even for a debt which the firm owes, unless he have express authority therefor from his co-partner, or unless the giving of such instruments is necessary to the carrying on of the firm business, or is usual in similar partnerships; and the burden is upon the holder of the note, who sues upon it, to prove such authority, necessity or usage."

In *Ulery* v. *Ginrich*, 57 Ill., 531, the partnership was for farming purposes, and the note in suit was given by one in the name of the firm for money borrowed. It was held to be a non-trading firm, and the same principles were adopted as in the cases previously cited. In *Hunt* v. *Chapin*, 6 Lansing, 139, it was held, MILLER, P. J., giving the opinion, that the rule which authorizes one member of a copartnership to bind the firm, is only applicable to business of a trading nature, and has no application to partnerships for agricultural purposes or others of a similar character. See also *Kimbro* v. *Ballett et al.*, 22 How., 256; *Graves et al.* v. *Kellenberger*, 51 Ind., 66; *Third National Bank* v. *Snyder*, 10 Misso. App., 211.

In Chalmers's "Digest of the law of Bills of Exchange, Promissory Notes and Cheques," second edition, pages 68 and 69, the following propositions are laid down as well settled rules:—"Art. 77. A partner in a trading firm has *primâ facie* authority to bind the firm by drawing, indorsing or accepting bills in the firm name for partnership purposes; and if the bill get into the hands of a holder for value without notice, the presumption of authority becomes absolute, and it is immaterial whether it were given for partnership purposes or not." "Art. 78. A partner in a non-trading partnership has *primâ facie* no authority to render his co-partners liable by signing bills in the partner-

ship name. The holder must show authority, actual or ostensible."

Many more authorities equally pertinent might be cited, but these will suffice to show that the distinction relied upon is strongly supported both in England and in the United States. While we feel constrained to adopt the distinction between the two classes of partnership so far as the presumption of authority or the want of it is concerned, we do not deem it necessary for the purposes of this case, or even quite reasonable, to carry its application so far as to deny absolutely, as some of the cases do, the right to recover on a note given by a non-trading firm for money borrowed for the firm and appropriated to its use, or on a note given in payment of its debts.

Some authorities ignore the test of liability referred to, but adopt another which is equivalent in result. Chancellor KENT, in his chapter on partnerships in the third volume of his Commentaries (7th ed.) p. 44, omits the use of the terms "trading" and "non-trading," and makes the distinction between partnerships in respect to the power of one partner to bind the firm depend on the single test of the usual scope of the business in connection with the subject matter of the contract.

This rule was adopted in *Crosthwaite* v. *Ross*, 1 Humph., 23, where it was held that one partner in the practice of medicine could not bind the firm by drawing a bill or note on which to raise money, because it was not within the scope of the partnership business. Though under a different name the real distinction here taken is between partners in trade and partners in an occupation.

Afterwards the same court, in the case of *Pooley, Barnum & Co.* v. *Whittemore*, 10 Herskell, 629, in a most able and elaborate opinion held that the liability of a partnership firm of the non-trading class to a bonâ fide holder of negotiable paper without notice, upon a note indorsed in its name by a member for his own benefit, would depend upon the nature of the business, the usage of trade and the course of dealing of the particular firm. It was also held that

where the nature of the partnership is such that it may or may not be proper to deal in negotiable instruments (as in that case, which was a publishing company), it was error in the circuit judge to charge without qualification that the firm was liable if the holder received the note before maturity in the due course of trade and without notice. We think the same principle under the circumstances of the case at bar made it error in the court below to hold the firm liable.

This court hitherto has had no occasion to give prominence to the distinction under discussion. The nature of the partnership business has however been made a ground for a presumption and a test of liability. In *Walcott* v. *Canfield et al.*, 3 Conn., 194, the defendants were partners in running a line of stages from Hartford to Albany and back. One of the partners by an advertisement promised to transport passengers and leave them at Albany in a specified time, upon which agreement the suit was based. The advertisement, being the act of one partner, was held not even admissible in evidence against the firm without previously establishing the authority of that one to bind the others. Hosmer, C. J., in delivering the opinion on page 198 said:— "A copartnership formed to transport passengers and their baggage in a stage, does not authorize one of the partners to bind the firm by an agreement that he will convey a person a certain distance within a specified time. Unless he had special authority he could only obligate himself by a contract not within the scope of the connection, and not his partners, who had never expressly or impliedly assented." The subject matter of the contract was different from the case at bar, but it seems even more closely connected with the scope of the business than the giving of the note in suit.

Many authorities lay down the unqualified proposition as if it was applicable to all partnerships, that if one partner raises money on a negotiable bill or note signed or indorsed in the name of the firm and which comes into the hands of a bonâ fide purchaser, the partnership is bound, although

it was in fact for the individual use of the acting partner. The doctrine is so stated in substance by this court in *New York Fire Ins. Co.* v. *Bennett,* 5 Conn., 574. The case shows that the partnership was a commercial one. We do not say however that public convenience does not demand the same rule in the case of non-commercial partnerships, where the holder was not advised of the nature of the partnership and its course of dealing or of other circumstances to put him on inquiry, and where the circumstances would justify the belief that he was dealing with the partnership. We may well leave this for future consideration, for upon the facts found we think the plaintiff's right was impaired by reason of what he knew in connection with the circumstances. We do not forget that the court below in terms found that the plaintiff purchased the note in good faith without notice of any defect. This of course means simply that there was no actual bad faith and no actual notice, and as matter of fact it is final, but at the same time the court found special facts as to the plaintiff's knowledge and action which we must also consider, and if we find constructive notice or constructive fraud the law must prevail.

The plaintiff as holder must stand affected by the nature of the partnership, of which he was fully advised. He purchased the note in the face of the presumption that it was unauthorized. To show the general nature of the facts which courts have held to be constructive notice, we cite a few cases.

In *Livingston* v. *Roosevelt,* 4 Johnson, 278, *A* and *B* formed a copartnership under the style of *A & Co.* in the business of sugar-refining, and so advertised in the newspapers. *B* afterwards, without the knowledge of *A,* bought a quantity of brandy, for which he gave a note indorsed by him with the name of the firm. The plaintiff, who was an indorsee of the note, took the newspapers in which the firm's business was advertised. KENT, C. J., after commenting on certain facts tending to show that the plaintiff knew that the purchase of the brandy was not a partnership concern, proceeded to lay down these principles:--

"But if the plaintiff did not in fact know that the purchase was made by C. I. Roosevelt on his own account and acted under the mistaken impression that it was a partnership purchase, still the firm were not bound by the indorsement, because the facts disclosed amounted to constructive notice or notice in law. * * * When a person deals with one of the partners in a matter not within the scope of the partnership, the intendment of the law will be that he deals with him on his private account, notwithstanding the partner may give the partnership name, unless there be circumstances to destroy that presumption. 'If,' says Lord Eldon, (8 Vesey, 544) 'under the circumstances the person taking the paper can be considered as being advertised that it was not intended to be a partnership proceeding, the partnership is not bound.' Public notice of the object of a copartnership, the declared and habitual business carried on, the store, the counting house, the sign, &c., are the usual and regular indicia by which the nature and extent of a partnership are to be ascertained. When the business of a partnership is thus defined and publicly declared, and the company do not depart from that particular business nor appear to the world in any other light than the one thus exhibited, one of the partners cannot make a valid partnership engagement on any other than a partnership account. * * * When the public have the usual means of knowledge given them, and no means have been suffered by the partnership to mislead them, every man is presumed to know the extent of the partnership with whose members he deals."

In 1 Collyer on Partnership, p. 650, it is said that "a note given by one partner in the partnership name, *within the scope of the partnership*, is binding upon the firm, but the payee is *bound to know* whether it is within the scope of his apparent authority, and if it is in excess thereof the firm is not responsible."

In *Cocke* v. *Branch Bank of Mobile*, 3 Ala., 175, the note in suit was signed in the partnership name of J. F. & W. Cocke, who were partners in keeping a tavern. It was exe-

cuted by J. F. Cocke, and payable to Lea & Langdon for their accommodation, without the knowledge of the other partner, Woodson Cocke. No actual knowledge of the circumstances was shown on the part of the bank, which sued as indorsee, but it was assumed to have been the duty of the bank to make inquiry. GOLDTHWAITE, J., in delivering the opinion said (p. 180:)—"The law presumes that the bank, if it inquired at all into the partnership of the defendants, must have received information that they were not partners in a mercantile trade, but only in the business of tavern keeping. This ascertained, it took the note at its peril, and must have relied on the faith of the indorsers." It was held that Woodson Cocke, the partner who had no knowledge of the transaction, was not liable.

In the case at bar the plaintiff had full and actual knowledge of the nature of the partnership, and the law attributed to him knowledge also that one partner could not bind the other by bill or note without authority, and knowing as he did that the note had been written and signed by McCarthy, who was irresponsible, and that if he purchased it it would be upon the credit of Cole alone, and having also actual knowledge of a course of dealing which avoided McCarthy and pointed to Cole alone as the financial representative of the firm, it seems to us the plaintiff took the note at his peril. It was very strange for the plaintiff to inquire of the one who had used the firm name if it was the note of the firm, and omit entirely, when he had ample and easy opportunity, to inquire of the other partner on whose sole credit he depended; but the court has found that the failure to inquire of Cole was not owing to a belief that inquiry would result in finding the note invalid, and this we must accept as true. Ordinarily such a finding would save the rights of a holder in good faith of negotiable paper, but the great difficulty in the present case is, that the note was purchased with constructive notice that it was not within the apparent scope of the partnership business and primâ facie was not the note of the firm; and the actual course of business, so far as it was known to the

plaintiff, tended to increase rather than allay the suspicion of a want of authority.

But the plaintiff contends that the judgment in his favor cannot be disturbed because the burden of proof was on the defendant. On this general subject of the burden of proof most of the authorities cited in another connection to show the distinction between the two classes of partnerships, and many others that we might cite, assert most positively that in the case of non-commercial partnerships the burden is on the holder of the note. But we concede that many cases can be found which in terms would seem to place the burden on the defendant.

In some of these cases the partnerships were in fact commercial, as in the case of *Fales* v. *Jordan*, 44 Miss., 283. In *Doty* v. *Bates & Handy*, 11 Johns., 544, PLATT, J., giving the opinion, said:—" The partnership being admitted, the presumption of law is that a note made by one partner in the name of the firm was given in the regular course of partnership dealings, until the contrary is shown on the part of the defendants." The case is so brief in the report that we cannot see clearly what was involved in the admission of the partnership which furnished the basis for the presumption. It incidentally appears in the description of the firm that its business was tanning, currying and shoemaking. This doubtless involved the buying of hides, bark and materials for tanning, and the sale of leather and shoes. The basis of the presumption was doubtless the apparent scope of the business.

In *Holmes* v. *Porter*, 39 Maine, 157, the head note omits an important qualification. The proposition laid down by the court is, that "when the contract is made in the name of the firm it will prima facie bind the firm, *unless it is ultra the business of the firm.*" The head note omits the last clause.

The case of *Carrier* v. *Carrier*, 31 Mich., 373, was relied upon by the plaintiff to show that the burden was on the defendant. In terms it so holds, but a brief analysis will show that it is not inconsistent with our position in this

case, and will suggest a mode of reconciling many apparently conflicting cases. There was nothing at all in the case to show the nature of the partnership and the plaintiff's knowledge of it. GRAVES, C. J., in giving the opinion stated the question as follows:—" Was the plaintiff below required, in order to make out a primâ facie case, to show at the outset that Carrier had express authority to make notes generally, or else to show either that the copartnership *was one of the class in respect to which such authority is presumed*, or that its course of business had been such as to imply authority, or that the signing by Carrier had been approved or ratified? The question was answered in the negative upon the authority of *Littell* v. *Fitch*, 11 Mich., 525.

It is to be noticed that the question was simply as to the burden of proof *after the fact of partnership was admitted* and before the nature or class of the partnership appeared. That being the position of the case the court well remarked that "it was not needful for the plaintiff by any positive averment or positive proof to negative a defense which in virtue of a general presumption would be intended not to exist. He could not be required to go into particular proof on such a point until some proof should appear in contravention of the presumption." In this statement of the law we fully concur, but it is not applicable to the facts in the case at bar, because the controlling fact in the proposition is wanting; proof in contravention of the presumption which at the outset was in favor of the plaintiff had appeared and had resulted in the finding of the opposing facts; and it is significant that all the facts which the above question impliedly concedes to be sufficient to overcome the presumption referred to are distinctly found, namely, that there was no express authority to make notes generally or to give this note; that the partnership was of the non-trading class, in respect to which no authority can be implied; that there was no course of business that could imply authority; and that the giving of this note had never been ratified or approved by Cole. Whatever presumption therefore there might have been in favor of the plaintiff at the outset had

been fully overcome, and if there exists any further fact from which an authority might be implied the plaintiff must show it or lose his case.

It is manifest that the Michigan case, as indeed all the cases treating of the burden of proof in suits on notes alleged to have been executed by partnerships, an illegitimate use has been made of the term "burden of proof." Properly it is applied only to a party affirming some fact essential to the support of his case. Thus used it never shifts from side to side during the trial. Loosely used, as in the cases referred to, it is confounded with the *weight of evidence*, a very different thing, which often shifts from one side to the other as facts and presumptions appear and are overcome, and in this indiscriminate use of the term "burden of proof," much of the apparent conflict in the cases has its origin. For, after all, the test of the burden of proof is very simple, and so is the question of the weight of evidence, and there is no contrariety in the principle adopted by the authorities. In the light of principle we think it may be demonstrated that the position of the plaintiff is untenable. A partnership has been sued on a note executed in its name. Upon the trial the note is produced by the plaintiff and the first question is—was it the note of the firm? The plaintiff takes the affirmative of this issue, because if no evidence is offered on either side he must fail; he has then the burden of proof, and it remains on him and does not pass at all to the defendant. But suppose now it is shown or admitted that the partnership alleged exists, and that one of the firm executed and delivered the note in its name. By virtue of the general presumption that authority was given by the partnership, the plaintiff is entitled to recover, if nothing further appears, because the weight of evidence is on his side. But suppose the defendants take their turn, and prove the identical facts here found—that there was no authority general or special given—no ratification of the act—no course of dealing to imply authority; and furthermore that the partnership was of a class from which no authority can be implied. Is the

plaintiff now entitled to a verdict? Has he proved that the note was the note of the firm? Surely not. What then is left on which to rest his case. The preponderance of evidence is not with him. The burden upon him to show that it was a partnership note has not now been met. But it is said that there is a realm of inquiry not touched by either party, that is, that it was not shown whether or not the partnership had the benefit of the consideration of the note. If such a fact appeared we concede for the purposes of this case that it would tend to show that the note was the note of the firm. But if an authority could not be implied as the case stood before, can it now be implied? The case stands precisely as before, there can be no change in the weight of the evidence because nothing has been added, and the claim of the plaintiff would seem to be reduced to the absurdity that he is to have the same benefit from an unproved fact as from one proved.

There was error in the judgment complained of, and as against the defendant Cole it is reversed and a new trial ordered.

In this opinion the other judges concurred; except GRANGER, J., who dissented.