DECISION AND JUDGMENT ENTRY
This is an appeal from a Gallia County Common Pleas Court judgment. The trial court granted a directed a verdict in favor of Merrill Evans, defendant below and appellee herein, and the jury returned a verdict in favor of Sharon Miller, defendant below and appellee herein.
Rosemary Ellis, plaintiff below and appellant herein, presents the following assignments of error for review:[1]
FIRST ASSIGNMENT OF ERROR:
 "WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE MERRILL EVANS' MOTION FOR A DIRECTED VERDICT INSOFAR AS NO EVIDENCE WAS INTRODUCED BY DEFENDANT/APPELLEE TO REBUT HIS PRESUMPTION OF NEGLIGENCE."
SECOND ASSIGNMENT OF ERROR:
 "WHETHER THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF/APPELLANT ROSEMARY ELLIS' MOTION FOR A DIRECTED VERDICT INSOFAR AS SUFFICIENT EVIDENCE WAS SUBMITTED TO CREATE A REBUTTABLE PRESUMPTION THAT DEFENDANT/APPELLEE MERRILL EVANS WAS NEGLIGENT AND NO EVIDENCE WAS INTRODUCED BY DEFENDANT/APPELLEE TO REBUT HIS PRESUMPTION OF NEGLIGENCE."
THIRD ASSIGNMENT OF ERROR:
 "WHETHER THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF/APPELL[ANT] ROSEMARY ELLIS' TRIAL OBJECTIONS INSOFAR AS THE COURT ERRONEOUSLY AND PREJUDICIALLY PERMITTED THE JURY TO CONSIDER THE ISSUE OF ROSEMARY ELLIS' ALLEGED NON-USE OF A SEATBELT."
Our review of the record reveals the following facts pertinent to the instant appeal. On December 18, 1994, at approximately 10:47 p.m., appellant and Appellee Miller, appellant's daughter, traveled southbound on State Route 160. Miller, the driver, subsequently collided with two cows that were on the road. Appellee Evans owned the cows.
On May 27, 1999, appellant filed a complaint alleging that Miller negligently hit the cows by failing to maintain an assured clear distance and that Evans negligently maintained his premises so as to allow the cows to escape into the road. Appellant claimed that appellees' negligence caused her injuries.
On August 24 and 25, 2000, the trial court held a jury trial. Evans testified that a "power fence" surrounded the perimeter of his property and that he kept the cows in a 4500 square foot barn that had one heavy-weight gate. Evans explained that double chains secured the gate to the barn where he kept the cows.
Evans stated that on the evening of the accident, he had checked the gate and had found everything to be secure. After the accident, however, Evans discovered that the "gate was bent double. It was bent toward the outside." Evans explained that both snaps on the chain were broken. He surmised that something had spooked the cattle and that the cattle must have stampeded through the gate.
Evans stated that in the many years in which he has been working around cattle, he never experienced cattle stampeding through a gate. He further stated that he believed that his gates conformed to industry standards and that he did not think that cattle guards, had they been in place, would have stopped the spooked cattle from escaping his property. Evans admitted that in the past, he has forgotten to close the gate to the barn and that a cow or two has gotten loose. Evans stated, however, that he kept a close eye on his cattle and that he always promptly retrieved loose animals.
At the close of the evidence, the court directed a verdict in Evans's favor. The trial court determined that Evans had presented evidence that rebutted the presumption of negligence and that appellant failed to present any evidence of negligence sufficient to submit the case to the jury.
On August 25, 2000, the jury found in Miller's favor. Appellant filed a timely notice of appeal.
 I
Because appellant's first and second assignments of error are interrelated, we will address the assignments of error together. In her first assignment of error, appellant argues that the trial court erroneously directed a verdict in Evans's favor. Appellant claims that Evans failed to rebut the presumption of evidence and that the trial court should have submitted the case to the jury. Appellant contends that Evans failed to exercise ordinary care to ensure that the cattle would not escape and that the duty of ordinary care required Evans to have cattle guards on his property to prevent an escape.
In her second assignment of error, appellant asserts that the trial court erred by overruling her motion for a directed verdict.[2]
Appellant argues that she presented sufficient evidence to establish a presumption that Evans was negligent and that Evans failed to present evidence rebutting the presumption.
Evans, on the other hand, contends that the trial court properly directed a verdict in his favor. Evans argues that he presented sufficient evidence to rebut the presumption of negligence and that appellant failed to produce any further evidence tending to demonstrate Evans's negligence. Evans asserts, therefore, that the presumption "disappeared," and required the trial court, in the absence of further evidence of negligence, to direct a verdict in his favor.
Civ.R. 50(A)(4) sets forth the standard for granting a directed verdict. The rule provides as follows:
When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue, reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion.
A motion for directed verdict presents a question of law. Wagner v.Roche Laboratories (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255. A court shall not grant a directed verdict when the record contains sufficient evidence going to all the essential elements of the nonmoving party's case. Id. In ruling upon the motion, the trial court may not weigh the evidence. Id. Rather, the court must construe the evidence most strongly in favor of the nonmoving party. Strother v. Hutchison (1981),67 Ohio St.2d 282, 284, 423 N.E.2d 467, 469. In construing the evidence most strongly in favor of the nonmoving party, the court must give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526,629 N.E.2d 395, 399; Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5,10, 358 N.E.2d 634, 637. When substantial evidence supporting the nonmovant's case exists, upon which reasonable minds might reach different conclusions, the trial court must deny the motion. Wells v.Miami Valley Hosp. (1993), 90 Ohio App.3d 840, 631 N.E.2d 642.
In order to survive a motion for a directed verdict in a negligence action, the party claiming negligence must have produced sufficient evidence to demonstrate the following: (1) the defendant owed her a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677,680, 693 N.E.2d 217, 274; Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142, 539 N.E.2d 614, 616; Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 472 N.E.2d 707.
When demonstrating negligence against the owner or keeper of cattle, R.C. 951.02 provides guidance. The statute states:
No person who is the owner or keeper of horses, mules, cattle, sheep, goats, swine, or geese, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land * * *.
The running at large of any such animal in or upon any of the places mentioned in this section is prima facie evidence that it is running at large in violation of this section.
R.C. 951.10 further provides:
 The owner or keeper of an animal described in [R.C.] 951.01 to 951.02, who permits it to run at large in violation of either of such sections, is liable for all damages caused by such animal upon the premises of another without reference to the fence which may enclose such premises.
R.C. 951.02 creates a rebuttable presumption of negligence. Burnett v.Rice (1988), 39 Ohio St.3d 44, 46, 529 N.E.2d 203, 205. To be entitled to the R.C. 951.02 rebuttable presumption, a plaintiff must introduce evidence that a defendant owned or kept the animal and that the animal was at large in a public highway.
Evid.R. 301 explains the effect of a presumption in a civil case.[3]
The rule states:
In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast.
In Ayers v. Woodward (1957), 166 Ohio St. 138, 140 N.E.2d 401, paragraph three of the syllabus, the court discussed a presumption as follows:
 "A presumption is a procedural device which is resorted to only in the absence of evidence by the party in whose favor a presumption would otherwise operate; and where a litigant introduces evidence tending to prove a fact, either directly or by inference, which for procedural purposes would be presumed in the absence of such evidence, the presumption never arises and the case must be submitted to the jury without any reference to the presumption in either a special instruction or a general charge."
Thus, when the party against whom the presumption is made introduces evidence rebutting the presumption, the presumption "bursts" and the case proceeds as if the presumption never had arisen. Id.; see McCormick, Evidence (4 Ed.Strong Ed. 1992) 582-83, Section 344. McCormick explains this "bursting bubble" theory as follows:
 "* * * [T]he only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. If that evidence is produced by the adversary, the presumption is spent and disappears. In practical terms, the theory means that, although a presumption is available to permit the party relying upon it to survive a motion for directed verdict at the close of its own case, it has no other value in the trial."
Id. at 583.
Although an adverse party may present sufficient evidence to rebut, and hence destroy, the presumption, the adverse party is not necessarily entitled to a directed verdict. Id. Rather, the basic facts may create an inference of the presumed fact sufficient to submit the case to the jury, "despite the existence of contrary evidence and despite the resultant destruction of the presumption." Id. If, however, the basic facts do not "present a natural inference of sufficient strength or breadth to take the case to the jury[,] * * * the court may grant a directed verdict against the party who originally had the benefit of the presumption." Id.
A practical application of the bursting bubble theory to a R.C. 951.02
case results in the party against whom the presumption arose being entitled to a directed verdict when: (1) that party presents sufficient evidence to demonstrate that he or she exercised ordinary care; and (2) the party in whose favor the presumption would otherwise operates fails to present any further evidence of negligence, beyond the basic facts that the defendant owned or kept the defined animal and that the defined animal was at large in a public highway. In other words, once a defendant in a R.C. 951.02 case rebuts the presumption of negligence, a plaintiff must then produce further evidence of negligence other than the mere fact that the defendant owned or kept the animal and that the animal was at large upon a public highway. The basic facts that the defendant owned or kept the animal and that the animal was at large on a public highway, standing alone, raises too tenuous an inference of negligence to submit the case to the jury.
We further note that in the absence of a presumption of negligence, the ordinary presumption is against negligence. As the court explained inWise v. Timmons (1992), 64 Ohio St.3d 113, 116, 592 N.E.2d 840, 842:
 "`* * * * In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary.' Biery v. Pennsylvania RR. Co. (1951), 156 Ohio St. 75, 45 O.O. 70, 99 N.E.2d 895, paragraph two of the syllabus. The rule applies where the accident itself is the only evidence of negligence adduced. `Where the doctrine of res ipsa loquitur is not involved, negligence is never presumed from the mere fact of an accident and resulting injury, but specific acts or omissions indicating failure on the part of the defendant to exercise due care must be alleged as the direct and proximate cause of the injury, and the burden is upon the plaintiff to prove the same.' St. Marys Gas Co. v. Brodbeck (1926), 114 Ohio St. 423, 151 N.E. 323, paragraph one of the syllabus."
In the case at bar, appellant initially introduced sufficient evidence to receive the benefit of the negligence presumption. Appellee Evans, however, presented evidence that he exercised ordinary care and that he was not negligent. Evans stated that he secured the heavy-weight gate enclosing the cattle barn with double chains and that on the evening of the accident, he had checked the gate and found it to be secure. SeeBurnett (upholding jury's verdict in favor of cattle owner when the evidence revealed that a fifty-two inch stock fence with barbed wire enclosed the property, the fence conformed to local industry standards, the fence was in good repair, and the gate was closed and was secured with a chain); Reed v. Molnar (1981), 67 Ohio St.2d 76, 80, 423 N.E.2d 140,144 (upholding jury's verdict finding no liability on the animal owner's part when: (1) the cattle were kept in a barn located on property immediately adjacent to roadway; (2) the barn gate was secured by a metal hook and eye; (3) a reinforcing beam further secured gate; (4) no fence or other barrier existed between the gate and the roadway; (5) on evening of incident, the owner had inspected the gate and found everything secure; (6) after the incident, the owner found the gate open and metal eye of closure broken off). No evidence exists to show that Evans's method to secure the cattle failed to conform to industry standards. In fact, Evans, an experienced cattleman, stated that the methods he used were widely accepted standards in the industry.
Therefore, we agree with the trial court's conclusion that Evans sufficiently rebutted the presumption and the presumption disappeared. In order to have the case submitted to the jury, appellant needed to submit further evidence of negligence. The basic facts that Evans owned the cattle and that the cattle were at large on a public highway do not, standing alone, give rise to a natural inference of negligence sufficient to submit the case to the jury. See McCormick, supra.
Moreover, the record fails to support appellant's claim that the duty of ordinary care required Evans to install cattle guards on his property. Evans stated that the cattle guards, had they been installed, would not have stopped the spooked cattle from stampeding. Evans stated that the cattle guard may have caused some of the cows to have broken their legs, but that if the cows were running from something that had scared them, a cattle guard would not have deterred them. Thus, the evidence in the record reveals that cattle guards, had they been in place on the night of the accident, would not have prevented the accident. Evans further stated that he did not believe that an ordinarily prudent cattle farmer was required to have cattle guards on his or her property.
Had appellant presented evidence that (1) the gate was unlocked or in disrepair,[4] (2) the gate was insufficient to properly secure the cattle inside the barn,[5] or (3) Evans knew the propensity of his animals to stampede[6] and knew of a mechanism that would prevent a stampede of sixty-eight cattle from escaping through the barn door, a directed verdict would have been improper. We find no such evidence in the record, however. Consequently, under the unique facts presented in the case at bar, we do not believe that the trial court erred by directing a verdict in Evans's favor and denying appellant's motion for a directed verdict.
Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error.
 II
In her third assignment of error, appellant argues that the trial court erred by permitting the jury to consider appellant's failure to wear a seat belt. Appellee Miller asserts that: (1) appellant did not suffer prejudice as a result of any error related to the trial court's decision to allow the jury to consider appellant's failure to wear a seat belt; and (2) appellant waived any error associated with the trial court's jury instruction regarding appellant's failure to wear a seat belt.
Initially, we agree with Miller that appellant waived any error associated with the trial court's jury instruction regarding appellant's failure to wear a seat belt. Although appellant objected to the testimony concerning her failure to wear a seat belt, appellant did not object to the trial court instructing the jury that it may, if it found Miller negligent, consider appellant's comparative negligence in failing to wear a seat belt.
Civ.R. 51(A) provides that "on appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Moreover, it is well-settled that failure to object at the trial court level to a complained of error results in a waiver of that error on appeal. See, e.g., Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121,679 N.E.2d 1099, 1103; Gallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 436-37, 659 N.E.2d 1232, 1240. But see Bennettv. Stanley (2001), 92 Ohio St.3d 35, N.E.2d in which the court did not address the waiver doctrine and decided the case based on matters not raised at any point during the trial or appellate proceedings.
Assuming, arguendo, that appellant had properly preserved the issue for review, we agree with Miller that any error associated with the trial court's decision to permit the jury to consider appellant's failure to wear a seat belt was not prejudicial and does not require a reversal of the trial court's judgment. The trial court instructed the jury that before determining whether appellant's failure to wear a seat belt constituted comparative negligence, the jury first had to determine that Miller was negligent. In the case at bar, the jury found that Miller was not negligent, and, therefore, the jury did not consider the seat belt issue. Thus, the trial court's instruction did not affect the judgment.
Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error. The trial court's judgment is hereby affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover from appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 __________________________________ Peter B. Abele, Presiding Judge.
Harsha, J. Kline, J. Concur in Judgment Opinion.
[1] We note that appellant's brief fails to designate "assignments of error," as App.R. 16(A)(3) requires. Rather, appellant presents "statements of issues." In State v. Volgares (May 17, 1999), Lawrence App. No. 98 CA 1, unreported, we explained the difference between "assignments of error" and "statement of issues" as follows:
 "`Assignments of Error' constitute specific rulings that the appellant challenges. See North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 343, 476 N.E.2d 388. Specific assignments of error `may dispute the final judgment itself or other procedural events in the trial court.' Id. The `Statement of Issues,' on the other hand, `should express one or more legal grounds to contest the procedural actions challenged by the assigned errors.' Id. at 343-44. These issues may provide distinct questions related to specific assigned errors or, where the assignment of error implicitly states the issue, may be substantially equivalent to assigned errors. Id. at 344."
In the case at bar, although appellant failed to properly designate assignments of error as App.R. 16(A)(3) requires, we will construe the "statement of issues presented" as the assignments of error.
[2] We note that appellant did not separately argue her second assignment of error, as App.R. 16(A)(7) requires. App.R. 12(A)(3) permits an appellate court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." We believe that our discussion of appellant's first assignment of error will fully dispose of appellant's second assignment of error. Therefore, we will not separately address appellant's second assignment of error.
[3] In Klunk v. Hocking Valley Railway Co. (1906), 74 Ohio St. 125,133-35, 77 N.E. 752, 754-55, the court explained the effect of a rebuttable presumption as follows:
 "The general rule would seem to be well established by an almost unbroken line of authority, — that to rebut and destroy a mere prima facie case, the party upon whom rests the burden of repelling its effect, need only produce such amount or degree of proof as will countervail the presumption arising therefrom. In other words, it is sufficient if the evidence offered for that purpose, counterbalances the evidence by which the prima facie case is made out or established, it need not overbalance or outweigh it. Chief Justice Deemer in Gibbs v. Bank, 123 Ia., 742, states the rule thus: `When a prima facie case is made out by presumption or otherwise, in order to destroy its effect and shift the burden of producing further evidence the party denying it must produce evidence tending to negative the claim asserted to a point where, if no more testimony is given, his adversary cannot win by a preponderance of the evidence. Smith v. Sac County, 11 Wall., 139 (20 L.Ed., 102); Stewart v. Lansing, 104 U.S. 505 (26 L.Ed., 866); Foster v. Hall, 12 Pick., 89 (22 Am. Dec., 400); M.P.R.R. v. Brazzil, 72 Tex., 233 (10 S.W. Rep., 403). It is clearly a misnomer of terms to say that the burden of proof swings like a pendulum from one side to the other during the progress of a trial. All that is meant is that the duty of introducing evidence to meet a prima facie case shifts back and forth. Pease v. Cole, 53 Conn., 53 (22 Atl. Rep., 681; 55 Am. Rep., 53). The burden of proof at all times rests upon him who affirms. 1 Taylor on Evidence (9 ed.), 276; Am. Notes, 12; Willett v. Rich, 142 Mass., 360
(7 N.E. Rep., 776; 56 Am. Rep., 684); Heinemann v. Heard, 62 N.Y., 488.' In Scott v. Wood, 81 Cal., 398, Hayne, C., commenting upon an instruction given by the trial court in that case, touching the quantum of evidence necessary to rebut a prima facie case, says: `We think that the court erred in telling the jury that the defendant was required to have a preponderance of testimony upon the question mentioned. The term "burden of proof" is used in different senses. Sometimes it is used to signify the burden of making or meeting a prima facie case, and sometimes the burden of producing a preponderance of evidence. These burdens are often on the same party. But this is not necessarily or always the case. And it is by no means safe to infer that because a party has the burden of meeting a prima facie case, therefore he must have a preponderance of evidence. It may be sufficient for him to produce just enough evidence to counterbalance the evidence adduced against him.' Perhaps one of the best statements to be found of the rule now under consideration, is that given by Chief Justice Shaw in Powers v. Russell, 13 Pick., 76, as follows: `It may be useful to say a word upon the subject of the burden of proof. It was stated here that the plaintiff had made out a prima facie case, and, therefore, the burden of proof was shifted and placed upon the defendant. In a certain sense this is true. Where the party having the burden of proof establishes a prima facie case, and no proof to the contrary is offered, he will prevail. Therefore, the other party, if he would avoid the effect of such prima facie case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the party whose case requires the proof of that fact, has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate.'"
[4] See McGinty v. Sliman (May 3, 1978), Lorain App. No. 2619, unreported (reversing trial court's grant of directed verdict in owner's favor when the owner stated that he found fence to be in good condition at least one week prior to the accident, but on the night of accident, found it broken).
[5] See Snow v. Courtright (1974), 38 Ohio St.2d 305, 313 N.E.2d 380
(holding that sufficient evidence existed to submit the case to the jury when the defendant's ponies escaped from a fenced-in area and ran onto the highway and that after the accident, the owner discovered the gate open and a wire used to secure the gate missing).
[6] See Keller v. Kain (Apr. 27, 1983), Wayne App. No. 1839, unreported ("Evidence which indicates that the [owner's] horses were on the highway on previous occasions would serve to demonstrate that the [owner] had knowledge of the horses' tendency to run at large.").